# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARUS HUNTER and     :
KENYA SHUJAA,     :
    :
       *Plaintiffs*,     :         CIVIL ACTION
v.     :
    :         17-0889
CITY OF PHILADELPHIA,     :
ROBERT SCHUTTE,     :
MICHAEL NAVEDO, and     :
MICHAEL MELVIN,     :
    :
       *Defendants*.     :
    :

## THIRD AMENDED COMPLAINT

Plaintiffs Kenya J. Shujaa and Darus L. Hunter allege as follows:

## NATURE OF THE ACTION

1.      On the night of September 13, 2015, Defendants Robert Schutte and Michael Navedo ("Defendant Officers" and individually "Defendant Officer") responded to a child custody matter in an overly aggressive and unprofessional manner. Plaintiffs attempted to report Defendant Officers' conduct to the local police station through a district sergeant, Sergeant Michael Melvin ("Defendant Sergeant Melvin"), and 911 operator, but were prevented from filing a report of the Defendant Officers' misconduct. Defendant Officers retaliated against Plaintiffs for complaining about Defendant Officers' conduct with the local police station by

returning to Plaintiffs' household on two separate occasions to harass, intimidate, and threaten Plaintiffs and Mr. Hunter's children.  During Defendant Officers' first retaliatory return to Plaintiffs' household, Defendant Officer Schutte unlawfully entered Plaintiffs' household and struck Ms. Shujaa in the belly with the front door.  Ms. Shujaa was 18 weeks pregnant at the time.  The force from the door caused her to have a miscarriage three days later.  During Defendant Officers' second retaliatory return to Plaintiffs' household during the early morning of September 14, Defendant Officers once again sought to intimidate Plaintiffs for attempting to file a complaint against Defendant Officers.  Plaintiffs seek compensatory and punitive damages, reasonable attorneys' fees, costs, and any other relief that this Court deems just and proper.

## **<u>PARTIES</u>**

2.      Plaintiff Kenya J. Shujaa is a citizen of the United States and a resident of Pennsylvania.

3.      Plaintiff Darus L. Hunter is a citizen of the United States and a resident of Pennsylvania.

4.      Defendant Officer Robert Schutte is believed to be a resident of Pennsylvania who at all times relevant to this action was a police officer of the Philadelphia Police Department.  Defendant Officer Schutte is sued in his individual capacity.

5.      Defendant Officer Michael Navedo is believed to be a resident of Pennsylvania who at all times relevant to this action was a police officer of the Philadelphia Police Department.  Defendant Officer Navedo is sued in his individual capacity.

6.      Defendant Sergeant Michael Melvin is believed to be a resident of Pennsylvania who at all times relevant to this action was a police officer of the Philadelphia Police Department.  Defendant Sergeant Melvin is sued in his individual capacity.

7.      At all times, Defendant Officers Schutte and Navedo and Defendant Sergeant Melvin were acting in their roles as officers and a sergeant of the Philadelphia Police Department and under the color of state law.

8.      Defendant the City of Philadelphia ("The City" and collectively with Defendant Officers and Defendant Sergeant Melvin "Defendants") is a municipality, duly organized and existing under the laws of the Commonwealth of Pennsylvania.

## **JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is appropriate in this district pursuant to 28 U.S.C.

§ 1391(b)(2) because a substantial part of the events or omissions giving rise to

Plaintiffs' claims occurred here.

## FACTS

**I.  Defendant Officers Unlawfully Enter Plaintiffs' Home in Response to a Routine Child Custody Dispute**

11.     On September 13, 2015, shortly before midnight, Defendant

Officers Schutte and Navedo went to Plaintiffs' home at 1242 South 51st Street in

Philadelphia, Pennsylvania.  The officers were responding to a complaint made by

the mother of Mr. Hunter's daughter, Khadira Muhammad, that Mr. Hunter had

violated a child custody order by retaining custody of Khadira on a school night.

12.     When Defendant Officers Schutte and Navedo arrived at

Plaintiffs' home, they knocked on Plaintiffs' door in a loud and aggressive manner.

13.     Mr. Hunter's eldest son, Darus Hunter Jr., who has severe

autism, was sixteen years old at the time of the incident, and is largely non-verbal,

answered the door.

14.     Defendant Officers then entered Plaintiffs' home without

permission or consent from either adult Plaintiff, or from any other individual who

was capable of giving consent.

15.     Mr. Hunter and his then girlfriend—now wife—Ms. Shujaa,

heard the Defendant Officers' aggressive knocking from their bedroom in the rear

4

of the home.  By the time Mr. Hunter reached the front door of the house, both Defendant Officers Schutte and Navedo were already in the living room, shining flashlights into the faces of his sleeping daughters, Syriana Hunter and Khadira, and shaking them awake.

16.     Mr. Hunter's daughters were five and seven years old respectively, and asleep in the living room at the time of the incident.

17.     Mr. Hunter asked Defendant Officers Schutte and Navedo why they had entered his home and asked them to go with him to the front porch so they would not disturb the children.

18.     On the front porch, Mr. Hunter explained to Defendant Officers Schutte and Navedo that he was not in violation of the custody order pertaining to Khadira because pursuant to the custody order, Mr. Hunter was permitted to keep Khadira at his house because she had the next day off from school.  Mr. Hunter showed Defendant Officers text messages from Khadira's mother from the week before demonstrating that Mr. Hunter and the child's mother had followed the same plan on the Sunday evening before Labor Day when Mr. Hunter had similarly kept Khadira through Sunday evening.  Meanwhile, Ms. Shujaa retrieved a copy of the custody order which reflected this agreement, and showed it to Defendant Officers.

19.     After Plaintiffs demonstrated that Khadira was lawfully present at their home, Defendant Officers left.

20.     Defendant Officers did not share their names or badge numbers with Plaintiffs at any point during this first encounter.

## II.    Police Station Personnel, Defendant Sergeant Melvin and 911 Operators Give Plaintiffs the Run-Around to Discourage them from Filing a Complaint

21.     Disturbed by the manner in which the officers had entered his home without consent and frightened his children and future wife, Mr. Hunter contacted both the Philadelphia Police Department's 12th District and 911 to submit a complaint.

22.     When Mr. Hunter first called the 12th District Police Station, a station employee told him he needed to call 911 to file a complaint.  But when Mr. Hunter called 911, the operator told him to call the police district where the incident occurred.

23.     When Mr. Hunter again called the 12th District and asked for a supervisor, he was transferred to Defendant Sergeant Melvin, who told Mr. Hunter to dial 911 to file a complaint.  Defendant Sergeant Melvin also claimed that he could not provide Mr. Hunter with the officers' names.

24.     The police department, Defendant Sergeant Melvin, and 911 operators refused to provide Mr. Hunter with information about Defendant Officers

and refused to accept Mr. Hunter's complaint thereby thwarting his attempt to voice his grievances with the Philadelphia Police Department.

25.     The purpose of giving Mr. Hunter the run-around was to prevent and/or discourage him from filing a complaint.

## III.     Defendant Officers Return to Plaintiffs' Home After Midnight in Retaliation for Plaintiffs' First Attempt to File a Complaint

26.     Sometime after midnight on September 14, 2015, Defendant Officers Schutte and Navedo returned to Plaintiffs' home and, again, knocked aggressively on the front door.

27.     Defendant Officers Schutte and Navedo had no legitimate police business at Plaintiffs' home.

28.     Defendant Officers' return and knocking frightened Ms. Shujaa, who was approximately 18 weeks pregnant at the time.

29.     Ms. Shujaa called 911 for help.  According to a partial transcript of the call, Ms. Shujaa spoke to Operator 86, explaining "I am actually calling because the police are knocking at my door a second time and what's going on is that there is a child custody matter.  But, I have two children asleep in the front room.  The first one it's just her five year old birthday . . . ."  [ECF No. 22-3].

30.     Unable to find recourse through the 911 dispatcher and feeling frightened by Defendant Officers Schutte and/or Navedo's prolonged and

aggressive knocking, Ms. Shujaa could not ignore Defendant Officers.  She felt compelled to open the front door.  Mr. Hunter was nearby.

31.     As she was opening the door, Defendant Officer Schutte forced the door into her stomach, placing his foot in the doorway and his hand on the door knob.

32.      The force from the door caused Ms. Shujaa to stumble backwards.

33.     There was no need for ***any*** force by Defendant Officer Schutte.

34.     Defendant Officers were present at Plaintiffs' home for the sole purpose of harassing and intimidating Plaintiffs in response to their attempt to file a complaint against Defendant Officers.

35.     At no point did Plaintiffs threaten Defendant Officers or seek to use force against Defendant Officers.

36.     During this time, Defendant Officer Navedo was standing on the front porch of the home next to Defendant Officer Schutte and shining his flashlight into the living room window.

37.     Mr. Hunter asked what the Defendant Officers were doing back at Plaintiffs' home and escorted the Defendant Officers outside.

38.     Defendant Officer Schutte responded that he ***knew*** Plaintiffs had attempted to file complaints against the Defendant Officers and repeatedly told

Mr. Hunter not to get himself "locked up."  Defendant Officer Schutte repeatedly asked Mr. Hunter if he had a problem with Defendant Officers.

39.    Mr. Hunter told Defendant Officer Schutte that he just wanted the officers to leave him alone.

40.    Defendant Officers once again shined their flashlights into Plaintiffs' home and in the faces of Mr. Hunter's sleeping children and left.

**IV.    Once Again Police Station Personnel and Defendant Sergeant Melvin Give Plaintiffs the Run-Around to Discourage them from Filing a Complaint**

41.    After Defendant Officers Schutte and Navedo left Plaintiffs' home, Mr. Hunter once again called the 12th District to lodge a complaint against Defendant Officers and to learn their identities.

42.    When Mr. Hunter called the 12th District, he was again referred to Defendant Sergeant Melvin, who would not accept his complaint about Defendant Officers and directed him to call 911 instead.  Defendant Sergeant Melvin again blocked Mr. Hunter's efforts.

**V.    Defendant Officers Torment Plaintiffs For a Third Time**

43.    Sometime after 1:00 am on September 14, and shortly after Mr. Hunter's second attempt to file a complaint, Defendant Officers Schutte and Navedo returned to Plaintiffs' home a third time.  Defendant Officers rang the doorbell and pounded on the door once again.

44.     By the time Mr. Hunter opened the door, he could see Defendants Schutte and Navedo walking away.

45.     Defendant Officers had no legitimate police business in returning to Plaintiffs' residence.

## VI.    Police Station Personnel, Defendant Sergeant Melvin, and 911 Operators Give Plaintiffs the Run-Around a Third Time to Discourage them from Filing a Complaint

46.     In response to this second retaliatory visit, Mr. Hunter again called 911 and asked to speak with a supervisor about Defendant Officers' conduct.  The 911 operator transferred him to Sergeant Hameen ("Sgt. Hameen," police radio #358).

47.     Mr. Hunter explained to Sgt. Hameen that Defendant Sergeant Melvin had told him earlier that he did not have the names of the officers who had visited Plaintiffs' home.  Sgt. Hameen told Mr. Hunter that Defendant Sergeant Melvin was lying if he claimed not to have the officers' names.

48.     Mr. Hunter called the 12th District once again, the fourth time that evening, and asked for a supervisor.  He was again transferred to Defendant Sergeant Melvin who refused for the third time to accept his complaint, and directed him to call 911 to report a complaint.  Mr. Hunter then relayed Sgt. Hameen's statement to Defendant Sergeant Melvin, and Defendant Sergeant

Melvin finally told Mr. Hunter that the officers were Defendant Officers Schutte and Navedo.

**VII.   Following Defendants' Unnecessary Visits and Pushing the Door Into Ms. Shujaa Without Any Reason, Ms. Shujaa Suffers a Miscarriage**

49.     Shortly after Defendant Officer Schutte unnecessarily pushed the front door into Ms. Shujaa's belly during the first retaliatory visit, Ms. Shujaa grew nauseous and felt a tightness in her abdomen.

50.     The next morning, on Monday, September 14, 2015, Ms. Shujaa continued to feel tightness in her belly and noticed small amounts of a clear discharge in her underwear.  The discharge, which she later found out to be amniotic fluid, continued through Tuesday evening.

51.     On Wednesday, September 16, 2015, the discharge became heavier.  Later that evening, the discharge turned bloody, and Ms. Shujaa began experiencing sharp pains and cramping in her abdomen.  She called an ambulance and was taken to Mercy Hospital.

52.     Ms. Shujaa was ultimately transferred to the Hospital at the University of Pennsylvania, where she suffered a miscarriage.

53.     As a direct and proximate cause of Defendant Officers' conduct, Plaintiffs sustained injuries, including the death of their unborn child.

54.     As a direct and proximate cause of Defendant Officers' conduct, Plaintiffs endure, and continue to endure, pain and suffering.

**VIII.  The City of Philadelphia's Custom of Ignoring an Executive Order and Police Directive, and/or Failure to Train Police Department Personnel on Accepting Citizen Complaints Result in Constitutional Violations**

55.     The Philadelphia Police Department personnel, who spoke with Mr. Hunter during his four calls to the 12th District and Plaintiffs during their multiple calls to 911, were all subject to Executive Order 7-11, titled "Processing of Complaints Alleging Police Misconduct" issued by former Mayor Michael Nutter on June 12, 2011.  *Executive Order No. 7-11*, https://www.phila.gov/ExecutiveOrders/Executive%20Orders/2011_EO07-11.pdf (last visited Mar. 22, 2018).

56.     The Executive Order sets forth procedures for addressing citizens' allegations of police misconduct.  The Executive Order provides that "[a]ll citizens' complaints against a police officer shall be received, investigated, and disposed of in accordance with the procedures set forth herein . . . ."  The Executive Order also requires Police Department personnel to "inform any person who wishes to make a complaint against a police officer of the existence of the formal complaint procedure established by this Executive Order and shall refer such persons to the various locations, including the nearest location, where the [Citizen's Complaint Report] may be obtained and filed."  Police Department personnel are also required to ***"maintain a professional demeanor and take no***

***actions to intimidate, coerce or otherwise dissuade a complainant from***

***submitting a [Citizen's Complaint Report]."*** (emphasis added).

57.    Defendant Officers; Defendant Sergeant Melvin, who spoke with Mr. Hunter during his four calls to the 12th District; and, the Police Department personnel who spoke with Plaintiffs during their calls to the 911 dispatch, were also subject to Philadelphia Police Department Directive 12.18.

58.    Philadelphia Police Department Directive 12.18 implemented Executive Order No. 7-11. *Philadelphia Police Department Directive 12.18*, https://www.phillypolice.com/assets/directives/D12.18-ComplaintsAgainstThePhiladelphiaPoliceDepartment.pdf (last visited Mar. 22, 2018).

59.    Philadelphia Police Directive 12.18 repeats the requirement from Executive Order No. 7-11 that Philadelphia Police Department personnel inform any person who wishes to make a complaint against a police officer of the existence of the formal complaint procedure and refer the person to the nearest location to obtain a Citizen's Complaint Report.

60.    On information and belief, the purpose of the Executive Order and Police Directive described above is to facilitate and protect citizens' constitutionally protected rights to criticize public officials, including police

officers, and to petition the Philadelphia Police Department to address their grievances against its officers.

61.     On information and belief, the purpose of the Executive Order and Police Directive is not to enable Police Department personnel to prevent or discourage citizens from filing complaints or to alert Officers that a citizen intends to file a complaint against them.

62.     Not once during Mr. Hunter's four separate phone calls to the 12th District nor during Plaintiffs' multiple calls to the 911 dispatch did various Philadelphia Police Department personnel inform Plaintiffs of the formal complaint procedure described in Executive Order No. 7-11 or Philadelphia Police Directive 12.18.  Nor were Plaintiffs directed to the nearest location to obtain a Citizen's Complaint Report.

63.     Instead, on three separate occasions Defendant Sergeant Melvin told Mr. Hunter to call 911 to report a complaint in an effort to prevent and discourage Mr. Hunter from filing a complaint.  Indeed, 911 dispatchers told Mr. Hunter on several occasions that he would need to call the 12th District to lodge a complaint, but when he called the 12th District repeatedly to report the Officers' wrongdoing, Mr. Hunter was turned away each time.

64.     Even worse, instead of assisting Plaintiffs by providing information about the complaint procedure and providing Mr. Hunter with the

names of the officers, Plaintiffs' requests to file a complaint were reported to

Defendant Officers Schutte and Navedo—the very officers about whom Plaintiffs

were seeking to file a complaint.

65.    Nowhere in Executive Order No. 7-11 or Philadelphia Police

Directive 12.18 does it state that the officers, who are the subject of a citizen

complaint, should be contemporaneously informed of a citizen's request to file a

complaint against them.

66.    Had Defendant Sergeant Melvin and the other Philadelphia

Police Department personnel refrained from reporting Plaintiffs' complaints to

Defendant Officers Schutte and Navedo, Defendant Officers Schutte and Navedo

would not have retaliated against Mr. Hunter and Ms. Shujaa as described above.

67.    Plaintiffs' experience with Philadelphia Police Department

personnel discouraging and preventing them from reporting Defendant Officers

Schutte and Navedo's misconduct is part of a pattern of Philadelphia Police

Department personnel failing to inform citizens of the formal complaint procedure,

failing to provide citizens with the names of officers who are the subject of their

complaints, and otherwise discouraging and/or preventing citizens from filing

complaints against police officers for their wrongdoing.

68.    A review of complaints against police, which have been made

publicly available as a part of the Philadelphia Police Department's accountability

processes, reflects a pattern of Philadelphia Police Department personnel hindering citizens' ability to file reports against the police.

69.    For example, the complainant associated with Complaint No. 13-0681 attempted to file a complaint in the 15th District and the supervisor on call "refused to give the officer's information and wrote the wrong badge number on the copies of the tickets he received."  Similarly, the complainant associated with Complaint No. 16-0009 was harassed by unidentified 12th District police officers (police officers from the same Police District as Defendant Officers) that came to her home.  When she went to a Police District to file a complaint against the officers, the officers at the window ignored her.  When the complainant associated with Complaint No. 16-0176 attempted to file a complaint in person at a Police District, the officers told the complainant they were out of English language complaint forms.  The complainant associated with Complaint No. 17-0107 attempted to file a complaint with both 911 and a Police District and was given the run-around.[1]

_____

[1] *See Complaints Against Police*, **OpenDataPhilly**, https://www.opendataphilly.org/dataset/police-complaints (last visited Mar. 22, 2018).  The full text of the complaints referenced in this paragraph is reproduced in Appendix A.  Appendix A is an excerpt from a CSV file documenting civilian complaints alleging police misconduct publicly available at https://www.opendataphilly.org/dataset/police-complaints.  The examples in Appendix A are meant to illustrate a pattern of similar violations, and they are non-exhaustive.

70.     Police Commissioner Richard Ross Jr. has constructive notice of the City's custom of routinely ignoring Executive Order No. 7-11 and Philadelphia Police Directive 12.18 and preventing citizens' from exercising their right to complain about police misconduct, as examples of the mishandling of citizens' requests to file complaints abound on the Philadelphia Police Department's complaint page.

71.     Moreover, on information and belief, the City's failure to train Philadelphia Police Department personnel on Executive Order No. 7-11 and Philadelphia Police Directive 12.18 reflects deliberate indifference to the likelihood that personnel who are untrained on how to accept a citizens' complaint will discourage and/or silence a citizen who wishes to file a grievance about police misconduct.

**COUNT I (against Defendant Officers Schutte and Navedo)**
**Unlawful Retaliation in Violation of the First and Fourteenth Amendments**

72.     Paragraphs 1 through 71 are incorporated by reference as if set forth herein at length.

73.     Defendant Officers Schutte and Navedo willfully and/or maliciously retaliated against Plaintiffs for exercising their constitutionally protected right to complain about the Defendant Officers' conduct.

74.     Defendant Officers engaged in conduct that would have deterred a person of ordinary fitness from exercising his or her constitutional rights.

75.     Through the conduct described above, the Defendant Officers violated Plaintiffs' rights under the First Amendment as incorporated by the Fourteenth Amendment to the United States Constitution by retaliating against Plaintiffs for engaging in protected speech and/or their right to petition for redress.

76.     Defendant Officers' unconstitutional retaliation directly and proximately caused Plaintiffs' loss of an unborn child, personal injuries, pain and suffering, loss of life's pleasures, and emotional distress.

77.     Accordingly, Plaintiffs are entitled to relief under 42 U.S.C. § 1983.

## COUNT II (against Defendant Officers Schutte and Navedo)
### Use of Excessive Force in Violation of the Fourth and Fourteenth Amendments

78.     Paragraphs 1 through 77 are incorporated by reference as if set forth herein at length.

79.     Defendant Officers Schutte and/or Navedo willfully, maliciously, recklessly, and/or unreasonably entered Plaintiffs' home without their consent and used force that was excessive under the circumstances against Ms.

18

Shujaa when they returned to Plaintiffs' residence after the custody dispute had

been resolved.

80.     At the time Defendant Officers Schutte and/or Navedo used

such force, they had no justification to do so.

81.     At no time did Plaintiffs use or threaten to use force against

Defendant Officers Schutte or Navedo.

82.     Plaintiffs were unarmed at all times.

83.     Through the conduct described above, the Defendant Officers

violated Ms. Shujaa's rights under the Fourth Amendment as incorporated by the

Fourteenth Amendment to the United States Constitution by using excessive force

that was not reasonably necessary under the circumstances.

84.     Defendant Officers acted in an unreasonable, malicious,

wanton, reckless, willful, and oppressive manner.

85.     Defendant Officers' violation of the Fourth and Fourteenth

Amendments to the United States Constitution proximately caused Plaintiffs' loss

of an unborn child, personal injuries, pain and suffering, loss of life's pleasures,

and emotional distress.

86.     Accordingly, Plaintiffs are entitled to relief under 42 U.S.C.

§ 1983.

## COUNT III (against Defendant Officers Schutte and Navedo)
### Unreasonable Search in Violation of the Fourth and Fourteenth Amendments

87.     Paragraphs 1 through 86 are incorporated by reference as if set forth herein at length.

88.     Defendant Officers Schutte and Navedo willfully and/or maliciously entered Plaintiffs' home without right of entry or Plaintiffs' permission during the first visit, when they were investigating the custody dispute, as well as the second visit, when they returned to Plaintiffs' residence after the custody dispute had been resolved.

89.     At no time were Plaintiffs in possession of any illegal contraband.

90.     Through the conduct described above, Defendant Officers violated Plaintiffs' rights under the Fourth Amendment as incorporated by the Fourteenth Amendment to the United States Constitution by unlawfully entering Plaintiffs' home, in which Plaintiffs had an expectation of privacy, without justification or Plaintiffs' consent.

91.     Defendant Officers' violation of the Fourth and Fourteenth Amendments to the United States Constitution proximately caused Plaintiffs' loss of an unborn child, personal injuries, pain and suffering, loss of life's pleasures, and emotional distress.

92.     Accordingly, Plaintiffs are entitled to relief under 42 U.S.C.

§ 1983.

**COUNT IV (against Defendant Sergeant Melvin)**
**Unlawful Restriction on Freedom of Speech and Right to Petition and**
**Unlawful Retaliation in Violation of the First and Fourteenth Amendments**

93.     Paragraphs 1 through 92 are incorporated by reference as if set

forth herein at length.

94.     Defendant Sergeant Melvin willfully and/or maliciously

prevented Plaintiffs from exercising their constitutionally protected right to

complain about Defendant Officers' conduct.  Defendant Sergeant Melvin's refusal

to accept Mr. Hunter's complaint and failure to advise him of the proper complaint

procedure as directed by Executive Order No. 7-11 and Philadelphia Police

Directive 12.18 had the effect of silencing Plaintiffs, violating their First

Amendment right to free speech.

95.     At its core, the complaint procedures set forth in Executive

Order No. 7-11 and Philadelphia Police Directive 12.18 are intended to provide an

avenue for citizens to seek redress from the Philadelphia Police Department for

wrongdoings committed by its employees.  Defendant Sergeant Melvin prevented

Plaintiffs from exercising this right to petition.

96.     In response to Plaintiffs' grievances about Defendant Officers,

Defendant Sergeant Melvin refused to take down Plaintiffs' complaint and

repeatedly and incorrectly told them to call 911 to report their concerns.

Defendant Sergeant Melvin's conduct had the effect of barring Plaintiffs from

filing a complaint on the evening of September 13 through the morning of

September 14.  Defendant Sergeant Melvin's conduct in response to Plaintiffs'

attempts to file a complaint would have deterred a person of ordinary fitness from

exercising his or her constitutional rights.

97.    Through the conduct described above, Defendant Sergeant

Melvin violated Plaintiffs' rights under the First Amendment as incorporated by

the Fourteenth Amendment to the United States Constitution by preventing and/or

discouraging Plaintiffs from engaging in protected speech and/or their right to

petition for redress.

98.    Accordingly, Plaintiffs are entitled to relief under 42 U.S.C.

§ 1983.

**COUNT V (against Defendant the City of Philadelphia)**
**Unconstitutional Custom and/or Failure to Train Pursuant to *Monell v.***
***Department of Social Services of the City of New York*, 436 U.S. 658 (1978)**

99.    Paragraphs 1 through 98 are incorporated by reference as if set

forth herein at length.

100.    Through the conduct described above, Defendant City of

Philadelphia violated Plaintiffs' First Amendment rights by engaging in a custom

of ignoring Executive Order 7-11 and Police Directive 12-18, thereby preventing

citizens from engaging in protected speech, preventing citizens from petitioning the Philadelphia Police Department for redress of their grievances, and deterring citizens of ordinary fitness from filing a complaint against police officers in violation of the First Amendment.

101.    Through the conduct described above, Defendant City of Philadelphia's failure to train Philadelphia Police Department personnel on how to accept complaints pursuant to Executive Order 7-11 and Police Directive 12.18 is deliberately indifferent toward the likelihood that Philadelphia Police Department personnel will violate the First Amendment by preventing citizens from engaging in protected speech, preventing citizens from petitioning the Philadelphia Police Department for redress of their grievances, and deterring citizens of ordinary fitness from filing a complaint against police officers, as shown by the numerous instances of similar violations.

102.    As a direct and proximate result of Defendant City of Philadelphia's unlawful custom and/or its failure to train, Defendant City of Philadelphia violated Plaintiffs' First Amendment rights.

103.    Plaintiffs have since suffered the loss of an unborn child and have experienced and continue to experience pain and suffering, loss of life's pleasures, and emotional distress.

104.   Accordingly, Plaintiffs are entitled to relief under 42 U.S.C. § 1983.

## COUNT VI (against Defendant Officers Schutte and Navedo)
### Intentional Infliction of Emotional Distress

105.   Paragraphs 1 through 104 are incorporated by reference as if set forth herein at length.

106.   Defendant Officers Schutte and Navedo willfully and/or maliciously inflicted severe emotional distress on Plaintiffs through extreme and outrageous conduct during their returns to Plaintiffs' home after the custody dispute was resolved.

107.   Through the conduct described above, the Defendant Officers violated Plaintiffs' rights under Pennsylvania law by intentionally causing Plaintiffs severe emotional distress.

108.   Defendant Officers acted in an outrageous, unreasonable, malicious, wanton, reckless, willful, and oppressive manner.

109.   Defendant Officers' intentional infliction of emotional distress proximately caused Plaintiffs' loss of an unborn child, personal injuries, pain and suffering, loss of life's pleasures, and emotional distress.

110.   Accordingly, Plaintiffs are entitled to relief under Pennsylvania law.

**COUNT VII (against Defendant Officers Schutte and Navedo)**
**Trespass**

111.    Paragraphs 1 through 110 are incorporated by reference as if set forth herein at length.

112.    Through the conduct described above, the Defendant Officers violated Plaintiffs' rights under Pennsylvania law by trespassing on Plaintiffs' land.

113.    Defendant Officers acted in an unreasonable, malicious, wanton, reckless, willful, and oppressive manner.

114.    Defendant Officers' violation of Plaintiffs' rights against trespass proximately caused Plaintiffs' loss of an unborn child, personal injuries, pain and suffering, loss of life's pleasures, and emotional distress.

115.    Accordingly, Plaintiffs are entitled to relief under Pennsylvania law.

**COUNT VIII (against Defendant Officers Schutte and Navedo)**
**Invasion of Privacy**

116.    Paragraphs 1 through 115 are incorporated by reference as if set forth herein at length.

117.    Defendant Officers Schutte and Navedo willfully and/or maliciously intruded into Plaintiffs' private seclusion in a highly offensive manner when they shined flashlights into and entered Plaintiffs' home during their

investigation of the custody matter, and when they returned to Plaintiffs' home without legitimate police business, twice.

118.   Through the conduct described above, the Defendant Officers violated Plaintiffs' rights under Pennsylvania law by physically intruding upon Plaintiffs' seclusion.

119.   Defendant Officers acted in an unreasonable, malicious, wanton, reckless, willful, and oppressive manner.

120.   Defendant Officers' violation of Plaintiffs' rights against invasion of privacy proximately caused Plaintiffs' loss of an unborn child, personal injuries, pain and suffering, loss of life's pleasures, and emotional distress.

121.   Accordingly, Plaintiffs are entitled to relief under Pennsylvania law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Honorable Court grant them the following relief:

a.   Nominal damages;

b.   Compensatory damages;

c.   Punitive damages;

d.   Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

e.    Such other relief as this Court deems just.

Dated:  March 22, 2018                        Respectfully submitted:

*/s/ Catherine C. Yun* (Pa. No. 324382)
Stephen D. Brown (Pa. No. 27829)
John P. McClam (Pa. No. 321252)
Catherine C. Yun (Pa. No. 324382)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215: 994-4000 (Telephone))
(215: 994-2222 (Fax))

*Counsel for Plaintiff Kenya Shujaa*

*/s/ Alexandra M. Lastowski* (Pa. No. 318359)
John C. Dodds (Pa. No. 44423)
Alexandra M. Lastowski (Pa. No. 318359)
Michaela D. Young (Pa. No. 320928)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  +1.215.963.5000
Facsimile:   +1.215.963.5001

*Counsel for Plaintiff Darus Hunter*

## **CERTIFICATE OF SERVICE**

I, Catherine C. Yun, do hereby certify that on March 22, 2018, I caused a true and correct copy of the foregoing Third Amended Complaint to be served upon all counsel of record via the Court's ECF filing system.

s/ Catherine C. Yun (Pa. No. 324382)
Catherine C. Yun (Pa. No. 324382)
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000 (telephone)
(215) 994-2222 (fax)

*Attorney for Plaintiff Kenya J. Shujaa*