# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

DARUS HUNTER, *et al.*,    :
                          :
          *Plaintiffs*,    :          CIVIL ACTION
v.                        :
                          :          17-0889
ROBERT SCHUTTE, *et al.*,  :
                          :          **Oral Argument Requested**
          *Defendants*.    :

---

## PLAINTIFFS DARUS HUNTER AND KENYA SHUJAA'S
## BRIEF IN OPPOSITION TO DEFENDANTS'
## <u>MOTION FOR SUMMARY JUDGMENT</u>

*/s/ Michaela D. Young*
John C. Dodds (Pa. No. 44423)
Michaela D. Young (Pa. No. 320928)
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA  19103
(215) 963-5000
michaela.young@morganlewis.com

*Attorneys for Plaintiff Darus Hunter*

*/s/ John P. McClam*
Stephen D. Brown (PA Bar No. 27829)
John P. McClam (PA Bar No. 321252)
Monica I. Gorny (PA Bar No. 324535)
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2046
john.mcclam@dechert.com

*Attorneys for Plaintiff Kenya Shujaa*

1

## INTRODUCTION

Defendants have moved for summary judgment, even though Defendant Officers Schutte and Navedo ("Defendant Officers") illegally entered and searched Plaintiffs' residence without a warrant, returned to Plaintiffs' home at 1 AM in the morning after learning of Plaintiffs' attempt to lodge a complaint against them, shoved the front door into Ms. Shujaa's abdomen causing her to suffer a miscarriage, stepped inside Plaintiffs' doorway a second time without a warrant, and shined a flashlight into Plaintiffs' darkened living room where Mr. Hunter's children were sleeping.

In addition, the record is full of material factual disputes that bear on Plaintiffs' claims.  For example, even Defendants' Proposed Statement of Undisputed Material Facts ("DPSUMF") acknowledges that whether "Officer Schutte pushed open the front door into the belly of Ms. Shujaa" is "in dispute." DPSUMF ¶ 10.  Accordingly, Defendants' Motion for Summary Judgment ("Defendants' Motion" or "Defs' MSJ") must be denied.[1]

---

[1] Plaintiffs agree to voluntarily dismiss Plaintiffs' Invasion of Privacy claim (Count VIII).  Additionally, Mr. Hunter is not seeking recovery for Use of Excessive Force (Count II) or Intentional Infliction of Emotional Distress (Count VI).  Counts II and VI pertain to Ms. Shujaa only.

## FACTUAL BACKGROUND[2]

On the night of September 13, 2015, Defendant Officers Schutte and Navedo

("Defendant Officers") went to Mr. Hunter and Ms. Shujaa's home, at 1242 South

51st Street, Philadelphia, Pennsylvania in response to a child custody-related

complaint made by the mother of Mr. Hunter's daughter, Khadira Muhammad.

CSMF ¶¶ 1-2.  When Defendant Officers arrived at the home and knocked on the

door, Mr. Hunter's son, Darus Hunter Jr., a minor with severe autism, opened the

door.  *Id*. ¶¶ 5-6.  By the time Mr. Hunter reached the front of the house, Defendant

Officers were already inside Plaintiffs' home and shining their flashlights at Mr.

Hunter's two younger children who were sleeping on cots at the front of the house.

*Id*. ¶¶ 3-4, 8.  Mr. Hunter asked the officers to step out onto the porch and

explained to them that the custody order, which Ms. Shujaa handed them,

permitted him to keep Khadira on Sunday nights when she did not have school on

Monday, which was the case that evening.  *Id*. ¶¶ 8-12.  After Defendant Officers

left, Mr. Hunter attempted to file a complaint against them on his and Ms. Shujaa's

behalf with the Philadelphia Police Department's 12th District and 911.  *Id*. ¶¶ 13-

16.  However, Defendant Sergeant Melvin prevented Mr. Hunter from filing a

---

[2] References herein are to Plaintiffs' Counter Statement of Material Facts
("CSMF").

2

complaint by repeatedly misinforming him of the procedure for doing so, and refusing to provide him with the necessary information.  *Id*. ¶¶ 14-16, 31.

Defendant Officers Schutte and Navedo then returned to Plaintiffs' home at approximately 12:55 AM in response to a call over the radio for a "supervisor only."  *Id.* ¶¶ 17-18.  Defendant Officers, neither of whom is a supervisor, knew that Plaintiffs had complained about their conduct, and because of this, they returned without waiting for a supervisor to arrive. *Id.* ¶¶ 17-22.  Defendant Officers' unexpected return and aggressive knocking frightened Ms. Shujaa, who was four and a half months pregnant at the time.  *Id*. ¶¶ 24, 37.  She called 911 for help and told Defendant Officers she was calling "because you are here.  Yes, we don't need anyone here."  *Id*. ¶¶ 25-26.  Despite her pleas, Defendant Officers persisted.  Ms. Shujaa hung up the phone and attempted to open the door.  *Id*. ¶ 27.  As she was turning the knob, Defendant Officer Schutte forced the door into Ms. Shujaa's abdomen causing her to stumble backwards and hit her back against the radiator behind her.  *Id*. ¶ 29.

After the impact, Ms. Shujaa felt weak and experienced tightness in her abdomen.  *Id*. ¶ 38.  The tightness continued and later that Monday morning, she noticed a clear discharge in her underwear that continued through Wednesday.  *Id*. ¶ 40.  On Wednesday, the discharge turned bloody and Ms. Shujaa felt sharp pains and cramping in her abdomen.  *Id*. ¶ 41.  An ambulance took her to Mercy Hospital

and then to the Hospital at the University of Pennsylvania where she suffered a miscarriage. *Id.* ¶¶ 42-45. Ms. Shujaa has received, and continues to receive, therapy due to the grief, depression, and anxiety she still suffers as a result of Defendants' conduct and the resultant miscarriage. *Id.* ¶¶ 47-49.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." *Id.*

"When reviewing a motion for summary judgment, the Court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion," here, the Plaintiffs. *Bradley v. City of Bethlehem*, No. 14-3221, 2016 WL 562055, at *1 & n.1 (E.D. Pa. Feb. 11, 2016) (citing *Siegel Transfer v. Carrier Express*, 54 F.3d 1125, 1127 (3d. Cir. 1995). "Indeed, 'a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat

summary judgment.'" *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018)

(quoting *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314, 320 (3d Cir. 2014)).

## ARGUMENT

## I.   GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIMS[3]

To prevail on their First Amendment retaliation claims, Plaintiffs "must

show (1) that they engaged in a protected activity, (2) that defendants' retaliatory

action was sufficient to deter a person of ordinary firmness from exercising his or

her rights, and (3) that there was a causal connection between the protected activity

and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d

259, 267 (3d Cir. 2007).  Here, there are genuine issues of material fact regarding

all three elements of retaliation, including whether:  1) Plaintiffs engaged in

"constitutionally protected conduct" when they called 911 and the 12th District to

---

[3] In their Motion for Summary Judgment, Defendants do not address Plaintiffs' First Amendment Claim against Defendant Melvin for restriction on freedom of speech and the right to petition.  "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). Defendant Melvin willfully and/or maliciously prevented Plaintiffs from exercising their constitutionally protected right to petition the government and complain about Defendant Officers' conduct.  Defendant Melvin's refusal to accept Mr. Hunter's complaint and failure to advise him of the proper complaint procedure as directed by Executive Order No. 7-11 and Philadelphia Police Directive 12.18 had the effect of silencing Plaintiffs, violating their First Amendment right to free speech.

complain about the Defendant Officers' behavior;[4] 2) Defendant Officers'

retaliatory return to Plaintiffs' home at 1 AM banging on the front door, waking up

Plaintiffs' family, threatening to arrest Mr. Hunter, attempting to enter without

permission, and pushing the front door into Ms. Shujaa's abdomen causing her to

suffer a miscarriage was "sufficient to deter a person of ordinary firmness from

exercising his constitutional rights;[5]" and 3) Defendant Officers' knowledge of

Plaintiffs' complaint at the time they returned to Plaintiffs' home shows "a causal

link between the constitutionally protected conduct and the retaliatory action.[6]"

Motion to Dismiss Order at 6, ECF No. 34 (quoting *Thomas v. Independence Tp.*,

463 F.3d 285, 296 (3d Cir. 2006)).

Defendants attack Plaintiffs' First Amendment claims on the grounds that:

a) "the record does not support that [Defendant Officers'] actions caused Plaintiffs

more than de minimis harm;" b) "there is no evidence Ms. Shujaa engaged in

protected activity;" c) Defendants' actions were not sufficient to deter a person of

ordinary firmness from exercising his First Amendment Rights because "Plaintiffs

were not actually deterred by Defendants' actions;" d) "there is no evidence that

Defendants' actions were related to Mr. Hunter calling the District of [sic] 911;"

---

[4] CSMF ¶¶ 13-16, 31.
[5] CSMF ¶¶ 17-23, 29.
[6] CSMF ¶¶ 22-23.

and e) qualified immunity "shields the individual Defendants from facing

liability." Defs' MSJ at 5-10. We address each argument in turn.

### A. Genuine Issues of Material Fact Exist as to Whether Defendants' Retaliation Inflicted More than *De Minimis* Harm

Defendants argue that the *de minimis* exception applies because, "[m]ost

importantly, Mr. Hunter successfully filed an official complaint September 21,

2015." Defs' MSJ at 6. However, the adverse consequences of Defendant

Officers' retaliation are not limited to Plaintiffs' ability to file a complaint.

Defendant Officers Schutte and Navedo returned to Plaintiffs' home at 1 AM,

pounded on Plaintiffs' door, threatened to arrest Mr. Hunter without cause, woke

Mr. Hunter's sleeping children, and pushed the front door into Ms. Shujaa's

abdomen causing her to stumble backwards into the radiator and suffer a

miscarriage three days later. CSMF ¶¶ 17-23; 29. The expert report of Dr. Arnold

Cohen supports Ms. Shujaa's belief that the impact from the door caused her

miscarriage. Dr. Cohen stated in his report that "the trauma that Ms. Shujaa

suffered after the door was opened by the police and hit her abdomen increased the

risk of and contributed to this pregnancy loss." *Id. ¶* 46. Thus, Defendants might

argue at trial that the events described by Plaintiffs did not occur or that the harm

described by Plaintiffs was *de minimis*, but it is up to the jury to decide these

genuine issues of material fact.

**B. Ms. Shujaa May Sue Defendant Officers for Their Retaliation in Response to Her 911 Call and Mr. Hunter's Complaints**

Defendant Officers pushed the door into Ms. Shujaa's abdomen causing her to have a miscarriage after Mr. Hunter called 911 and the 12th District to complain *and* after Ms. Shujaa told Defendant Officers that she called 911 because Defendant Officers returned to her house.  Both Mr. Hunter and Ms. Shujaa's communications were protected speech and Ms. Shujaa may assert either communication or both as the basis for her retaliation claim.

1.   Ms. Shujaa Engaged in Protected Speech when She Called 911 to Complain about Defendant Officers Returning to Her Home

It is undisputed that Ms. Shujaa called 911 when Defendant Officers returned to her house at 1 AM.  DPSUMF ¶ 9; CSMF ¶ 25.  The recorded 911 call indicates that Ms. Shujaa told the Officers that she was complaining about Defendant Officers' conduct to 911:  "KS to [Defendant] Officers who responded:  'I didn't call you to my house, *I called because you are here*.  Yes, we don't need anyone here.'"  CSMF ¶ 26 (emphasis added).  Her call to 911 was protected speech.  *City of Houston v. Hill*, 482 U.S. 451, 462 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").  Accordingly, Ms. Shujaa's First Amendment retaliation claim may be based upon her own protected speech.

2.   Ms. Shujaa May Sue Defendant Officers for Retaliation Based
      on Mr. Hunter's Protected Speech

Mr. Hunter engaged in constitutionally protected conduct when he called

911 and the 12th District to complain about Defendant Officers' conduct.  *See*

Motion to Dismiss Opinion at 6, ECF No. 34.  Mr. Hunter, however, is not the only

person that can bring a First Amendment claim based on Defendant Officers'

retaliatory response to that speech.  The First Amendment is also violated "where

the speech that invoked the government's retaliatory response was not made by the

plaintiff herself, but rather by a person in a close relationship with the plaintiff, and

the government retaliated against the plaintiff for her perceived association with

the other person and that person's speech."  *Lewis v. Eufaula City Bd. of Educ.*, 922

F. Supp. 2d 1291, 1302–03 (M.D. Ala. 2012) (collecting cases).  Accordingly, Ms.

Shujaa may also bring a First Amendment retaliation claim against Defendant

Officers based on Mr. Hunter's protected speech.

Where, as here, the plaintiff asserting third party standing has suffered

concrete, redressable injury, courts in this circuit consider the following three

elements before allowing the claim to proceed:

> First, the court must examine the relationship between the
> plaintiff and the third party whose rights are asserted;
> second, the court must consider the ability of the third
> party to advance its own rights—whether some obstacle
> impedes the rightholder's own suit; and third, the court
> must inquire into the impact on third party interests—

> whether the plaintiff and the third party have consistent
> interests.

*Amato v. Wilentz*, 952 F.2d 742, 749 (3d Cir. 1991).  All three elements support

Ms. Shujaa's ability to bring her retaliation claim against Defendant Officers.

　　Additionally, courts in this circuit routinely allow victims of retaliation

stemming from the protected speech of others to go forward with their own claims

in similar circumstances.  *See, e.g.*, *Helm v. Foresman*, No. 4:17-0669, 2018 WL

461246, at *6 (M.D. Pa. Jan. 18, 2018) (finding that "the plaintiff would have

standing to assert his wife's speech as a basis for his First Amendment retaliation

claim"); *Serena H. v. Kovarie*, 209 F. Supp. 2d 453, 458 (E.D. Pa. 2002)

(permitting child to assert First Amendment rights of mother to obtain relief for

alleged retaliation against child for mother's protected speech); *Ballas v. City of

Reading*, 153 F. Supp. 2d 691, 695–96 (E.D. Pa. 2001).  For example, in *Ballas v.

City of Reading*, the court concluded that a wife, who was fired from her municipal

job in retaliation for her husband's protected speech, had standing to assert her

husband's speech as a basis for her First Amendment retaliation claim.  153 F.

Supp. 2d at 695-96.  The court found that the *Ballas* plaintiff met all three of the

factors described above.  *Id.*  First, as husband and wife, the speaker and the

plaintiff were "closely connected."  *Id.* at 695.  Second, the husband-speaker

"could not assert a First Amendment claim because he lacked constitutional injury"

since his wife was the one who lost her job.  *Id.*  Third, the husband's "enjoyment

10

of the right to speak out on his political beliefs is entwined with [the wife's] interest in continued employment with the City [] because they are financially dependent upon each other."  *Id.* at 695-96.

The *Ballas* court's reasoning is equally applicable here.  First, Mr. Hunter and Ms. Shujaa are married and Ms. Shujaa was pregnant with Mr. Hunter's child at the time of the incident.  Therefore, their relationship is sufficiently "closely connected."  Second, Defendants argue that "Plaintiffs have failed to demonstrate that any harm [Mr. Hunter] incurred was more than de minimis" because Mr. Hunter was ultimately able to file a complaint against Defendant Officers and the harm from the door was inflicted upon Ms. Shujaa—not Mr. Hunter.  Defs' MSJ at 6.  Thus, Ms. Shujaa, as the party physically injured by Officer Schutte's use of force, is similarly situated to the plaintiff-wife in *Ballas* who lost her job as a result of her husband's speech.  Third, Mr. Hunter's interest in speaking out against police misconduct, which Ms. Shujaa supported[7], is "entwined" with Ms. Shujaa's interests in avoiding police harassment and excessive force and continuing to carry their unborn child.  Accordingly, Ms. Shujaa has standing to sue Defendant Officers Schutte and Navedo for the injuries she suffered as a result of their retaliation against her for Mr. Hunter's complaints.

---

[7] CSMF ¶ 13; Ex. B, Shujaa Dep. 63:22-24 ("I objected to [Defendant Officers] being in the house and so I supported his interest in complaining.").

**C. Genuine Issues of Material Fact Exist as to Whether Defendant Officers' Return to Plaintiffs' Home at 1 AM Banging on the Door, Threatening Mr. Hunter, Waking up His Children, and Pushing the Door into Ms. Shujaa's Abdomen Causing Her to Miscarry would Deter a Person of Ordinary Firmness from Exercising his Constitutional Rights**

Whether Defendant Officers' conduct in response to Plaintiffs' complaints was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights is an objective inquiry and ***ultimately a question of fact***." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (emphasis added) (internal marks and citations omitted). Whether Ms. Shujaa and Mr. Hunter were actually deterred from exercising their First Amendment rights is "immaterial." *Cordero v. Warren*, 612 Fed. Appx. 650, 652-53 (3d Cir. 2015) (holding that the "second prong is not a subjective inquiry . . . . Whether [plaintiff] was deterred is immaterial; the question is whether 'a person of ordinary firmness' would be deterred. (citing *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001)). The evidence shows that Defendant Officers returned to Plaintiffs' home at 1 AM, banged on Plaintiffs' front door, threatened Mr. Hunter, woke up his children, and pushed the door into Ms. Shujaa's abdomen causing her to suffer a miscarriage. CSMF ¶¶ 17-23, 29. Therefore, Defendant Officers' conduct exceeds the threshold for what a court may conclude, as a matter of law, "would not chill the speech of a person of reasonable firmness." Motion to Dismiss Opinion at 6.

### D. Defendant Officers Retaliated Against Plaintiffs *After* Learning that Plaintiffs Complained about the Officers' Prior Conduct

At 12:48 A.M., after Defendant Officers left Plaintiffs' residence the first time and after Plaintiffs first complained about Defendant Officers' conduct, a call went over police radio for "a supervisor only" at Plaintiffs' address.  CSMF ¶¶ 18-19.  At approximately the same time, Defendant Officers received the following message on their in-car computer system, "MALE COMPL. . . IN REF TO OFFICERS RESPONDING FOR A CUSTODY DISPUTE . . . MALE REQUESTING A SUPERVISOR."  *Id. ¶* 19.  Neither Defendant Officer is a "supervisor" and both officers returned to Plaintiffs' residence without waiting for their supervisor.  *Id.* ¶¶ 20-21.  Additionally, Defendant Officers testified in their depositions that they knew a complaint had been lodged against them at the time they responded to the "supervisor only" radio call without a supervisor.  *Id.* ¶¶ 22-23.  Accordingly, Defendants' argument that "there is no evidence that Defendants' actions were related to Mr. Hunter calling the District [sic] of 911"[8] has no basis in fact and is flatly contradicted by the evidence in this case.

### E. Defendant Officers are Not Entitled to Qualified Immunity on Plaintiffs' First Amendment Retaliation Claim

As this Court stated in its Motion to Dismiss Opinion, "it is well established that public officials may not retaliate against citizens who complain about the

---

[8] Defs' MSJ at 9.

officers."  Opinion at 6 (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Defendants' Motion fails to cite evidence from the record or case law that

undermines this conclusion.

Additionally, Plaintiffs cannot tell whether the "Qualified Immunity" section

on page 10 of Defendants' brief pertains to all individual Defendants or to Sergeant

Melvin only.  *Compare* "qualified immunity ***bars Plaintiffs from suing the***

***Sergeant Melvin***" *with* "Qualified immunity thus ***shields the individual***

***Defendants*** from facing liability, and the Court should dismiss the ***claims against***

***him***."  Defs' MSJ at 10.  In any event, Defendants fail to articulate which right was

not "clearly established" at the time of the incident or how it was not "clearly

established," regardless of which Defendant(s) the argument pertains to.

## II. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT OFFICERS USED EXCESSIVE FORCE AGAINST MS. SHUJAA

### A. Genuine Issues of Material Fact Exist as to Whether the Amount of Force Officer Schutte Used in Pushing the Door into Ms. Shujaa was Unreasonable Under the Circumstances

Whether the amount of force Officer Schutte used against Ms. Shujaa when

he pushed the front door into her abdomen hard enough for her to stumble

backward and later suffer a miscarriage is a question of fact for the jury.  *Rivas v.*

*City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) ("The reasonableness of the use

of force is normally an issue for the jury.").  When evaluating an excessive force

claim, the question is whether the officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to . . . [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Determining whether an officer used more force than was justified under the circumstances requires careful attention to the facts and circumstances of each particular case, including: (1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene. *Graham*, 490 U.S. at 396; *Stiegel v. Peters Twp.*, 600 F. App'x 60, 65 (3d Cir. 2014) (describing the three "*Graham* factors").

Summary judgment should not be granted where all three *Graham* factors are in Ms. Shujaa's favor and she suffered significant injury. In *Santini v. Fuentes*, for example, the Third Circuit vacated the district court's decision granting summary judgment after determining that all three *Graham* factors weighed in plaintiff's favor. 795 F.3d 410, 420-21 (3d Cir. 2015). There, plaintiff was only "a witness to a crime, he did not threaten violence against the officer, the scene that the officers were confronted with was peaceful at the time of the [] interaction, and there were many officers at the scene" so there was only "limited justification for the government's actions. *Id.* at 420. In contrast, "the infringement on Santini's rights was great: he was grabbed, tackled, punched, kicked, and pepper sprayed,"

15

though his medical records from the incident did not reveal permanent or lasting injuries. *Id.* at 414.

Similarly, here, all three *Graham* factors weigh heavily against granting summary judgment. First, there was no "crime at issue." Defendant Officers Schutte and Navedo were responding to a ***call made by the Plaintiffs themselves***. Thus, at the time Defendant Officers returned, Plaintiffs were victims/witnesses of the police misconduct Mr. Hunter complained of in his calls to 911 and the 12th District—not suspects of a crime. Second, Ms. Shujaa, who is only five feet and five inches tall and weighs 125 pounds, was four and half months pregnant and visibly showing at the time of the incident. CSMF ¶¶ 36-37. Neither she nor Mr. Hunter posed a threat to Defendant Officers or anyone else. Third, Ms. Shujaa did not attempt to resist or flee the scene—she submitted to Defendant Officers' authority when she attempted to open the door at their request. Therefore, ***any*** amount of force would be objectively unreasonable under the circumstances.

Defendants argue that even if Defendant Officer Schutte did push the front door into Ms. Shujaa, such force was *de minimis*. However, the cases Defendants cite for this proposition are readily distinguishable because (1) the plaintiff was not actually injured, and/or (2) the courts' analysis of the *Graham* factors permitted a greater degree of force than would be reasonable under the circumstances of this case. *Garcia v. Cty. of Bucks, Pa.*, 155 F. Supp. 2d 259, 264-65 (E.D. Pa. 2001)

(concluding the force used in arresting plaintiff ***pursuant to a valid warrant*** was reasonable because it "did ***not result in even de minimus injury***" (emphasis added)); *Billman v. Corbett*, No. 10-2996, 2011 WL 605814, at *2 (E.D. Pa. Feb. 15, 2011) (momentarily grabbing plaintiff's arm "in a manner that was uncomfortable, but ***not painful***" was not objectively unreasonable").  For example, in *Foster v. David*, the court acknowledged that "removing an individual from a doorway ***in a manner that does not cause injury*** in order to ***conduct a legal search*** constitutes a *de minimis* force."  No. 04-4829, 2006 WL 2371976, at *7 (E.D. Pa. Aug. 11, 2006) (emphasis added).  In contrast, here, Defendant Officer Schutte caused serious injury to Ms. Shujaa when he pushed the front door into Ms. Shujaa's abdomen propelling her backwards into the radiator and causing her to suffer a painful and traumatic miscarriage days later.  Additionally, Defendant Officer Schutte's use of force was part of an illegal search of Plaintiffs' home in retaliation for Plaintiffs' complaints to 911 and the 12th District—Defendant Officers were not exercising a valid arrest warrant or conducting other routine police business.  *Id.*

Defendants have not cited to and Plaintiffs are not aware of legal precedent suggesting that it is objectively reasonable for an officer, while investigating a complaint made against that officer, to push a door into the person that made the complaint.  CSMF ¶ 23 ("the only reason why we knocked on the door is because

17

we didn't understand why there was a complaint coming out"). Furthermore, the pain and suffering Ms. Shujaa experienced as a result of the Officers' actions and her subsequent miscarriage were not *de minimis*. There is no safe harbor on the one to ten pain scale protecting defendants from excessive force liability when the pain they inflict fails to reach a certain threshold. And, while Ms. Shujaa explained at her deposition that "immediately" her pain was a "1 or 2" out of ten, her medical records from Mercy Philadelphia Hospital describe her pain as, "aching pain, cramping pain, to the suprapubic region, on a scale 0-10 patient rates pain as 10." Ex. B, Shujaa Dep. 76:2-77:19; CSMF ¶ 43.

### B. Summary Judgment Cannot Be Granted Where Genuine Issues of Material Facts Exist

Defendants argue that Ms. Shujaa's excessive force claim should be dismissed because "[w]hile Ms. Shujaa claims Officer Schutte forced the front door into her belly, the statements provided by Ms. Shujaa to Internal Affairs, 911 audio recordings, and medical records indicate no force of any type was used." Defs' MSJ at 11. But, as an initial matter, summary judgment is inappropriate where there are genuine disputes as to any material facts and courts are "not to weigh the evidence and determine the truth of the matter" at the summary judgment stage. *See e.g.*, *Sec'y United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 90 (3d Cir. 2017) (internal quotations omitted). Yet, that is precisely what Defendants are asking this Court to do.

18

Furthermore, the records that Defendants claim "indicate no force of any type was used" either contradict that conclusion or are ambiguous.  For example, Ms. Shujaa's internal affairs interview states, in relevant part:

> I was at the closed front door telling the officer's [sic] things like, "why are you back here?"  "We already showed you the paperwork."  "I have 911 on the phone."  "I'm not opening the door until you supervisor comes."  I did unlock the door.  They were telling me to open the door.  They are the police, so I was considering opening it.  All of the sudden ***the heavier, bald officer leaned in and forced the door open into me.  It took my breath away.  My husband saw me stagger back***.  He yelled at the officers, "What are you doing?"  I was still on the phone with 911 when they came in.

Ex. F, D040 at -040, Interview of Kenya Shujaa (emphasis added).  Notably, Defendants' Motion omits the part about the bald officer (Officer Schutte) leaning in and forcing the door into Ms. Shujaa.  Instead, Defendants ask the Court to accept their tenuous assumption that the incident with the door never happened because Ms. Shujaa said she was on the phone with 911 when the officers came in (a point she corrected at her deposition after Defendants produced a recording of her phone call with 911[9]) and the 911 audio recording does not reflect an altercation with the door.  Defs' MSJ at 10-11.  However, the Court must construe "all evidence in the light most favorable to the non-moving party," Ms. Shujaa.  Thus, taking Ms. Shujaa's deposition testimony and her internal affairs statement

---

[9] *See* CSMF ¶ 28.

that one of the officers pushed the door into her at face value, Defendants have not met their "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Schneider v. Works*, 223 F. Supp. 3d 308, 314 (E.D. Pa. 2016) (internal marks and citations omitted).

The same principle applies to Ms. Shujaa's medical records that Defendants claim show no prior trauma occurred. Defs' MSJ at 12. Ms. Shujaa did not create the records and we do not know what she discussed with the doctors, nurses, and paramedics when they created the records. Ms. Shujaa is not a doctor. Her inability, as a lay person, to put her finger on the causal connection between the door striking her abdomen and a miscarriage days later while in the midst of one of the most painful and traumatic experiences of her life is unsurprising. That is why Ms. Shujaa retained an expert in this case. Dr. Cohen stated in his Report based on his "over 35 years of being a Board Certified Maternal Fetal Medicine Subspecialist and 40 years of being a Board Certified Obstetrician/Gynecologist" that:

> The temporal relationship between the onset of pain, discharge and then contractions with bleeding after the trauma of the door hitting Ms. Shujaa in the abdomen and then her hitting her back on the radiator (contra-coup injury) as well as the finding of a placental clot after deliver makes the likely cause of this pregnancy loss to be an abruption due to abdominal trauma.

Ex. Q, Report of Arnold W. Cohen, M.D. (Oct. 13, 2018), at 4.  Defendants are welcome to argue to the contrary at trial, but at this stage, Plaintiffs have "come forward with specific facts"—by way of their deposition testimony, internal affairs statements, and the expert report of Dr. Cohen—"showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal marks omitted).

### C. Officer Navedo had a Duty to Intervene to Prevent Officer Schutte from Using Excessive Force Against Ms. Shujaa

At the time Defendant Officer Schutte pushed the front door into Ms. Shujaa's abdomen, Defendant Officer Navedo was standing right next to Defendant Officer Schutte shining his flashlight into the window immediately adjacent to the front door.  *See* CSMF ¶¶ 29-30.  Thus, a factfinder could conclude that Officer Navedo knew that Officer Schutte was about to use excessive force against Ms. Shujaa by leaning against and pushing on the door, had an opportunity to intervene, but refused to do so.  A plaintiff can sustain an excessive force claim under Section 1983 against an officer who did not participate directly in the use of force if that officer failed to intervene despite a "realistic and reasonable opportunity" to do so.  *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983."  (internal citation omitted)); *Baker v. Monroe Twp*., 50

F.3d 1186, 1193-94 (3d Cir. 1995) (awareness of fellow officer's use of excessive force and inaction in the face of that force can serve as the basis for a failure to intervene claim).  Defendant Officer Navedo cannot "escape liability by turning either a blind eye or deaf ear to the illegal conduct" of Defendant Officer Schutte. *Morales v. Taveras*, No. 05 4032, 2007 WL 172392, at *15 (E.D. Pa. Jan. 18, 2007) (citing *Mensinger*, 293 F.3d at 652).  Standing shoulder to shoulder with Defendant Officer Schutte, a genuine issue of material facts exists as to whether Defendant Officer Navedo had a "realistic and reasonable opportunity" to prevent Defendant Officer Schutte from using excessive force against Ms. Shujaa. *Mensinger*, 293 F.3d at 650-51.  Therefore, Defendant Officer Navedo may be liable for excessive force for failing to intervene, and Ms. Shujaa's claims against him should not be dismissed.

## III. DEFENDANT OFFICERS SCHUTTE AND NAVEDO ARE NOT IMMUNE FROM LIABILITY UNDER THE POLITICAL SUBDIVISION TORT CLAIMS ACT FOR PLAINTIFFS' TRESPASS CLAIM

Defendant Officers Schutte and Navedo trespassed on Plaintiffs' property when they entered Plaintiffs' home without consent in the first instance, and later, returned a second time in response to a supervisor-only call and Defendant Officer Schutte forced the door open into Ms. Shujaa's abdomen and placed his foot across the threshold of the door.  *See* CSMF ¶¶ 5-8, 29.  Defendants argue, incorrectly, that Plaintiffs' trespass claim against Defendant Officers is barred by the Political

Subdivision Tort Claims Act ("PSTCA").  The PSTCA provides that Pennsylvania

municipal agencies and their officers acting in their official capacities are immune

from liability for damages arising out of injuries to persons or property.  42 Pa.

Cons. Stat. §§ 8541, 8545; *see also Allen v. Dist. Attorney's Office of Phila.*, 644 F.

Supp. 2d 600, 610–11 (E.D. Pa. 2009) ("Section 8542 protects municipalities from

state-law liability, and Section 8545 extends the scope of the Act to protect

governmental employees.").  However, an exception to immunity under the

PSTCA applies here because the Defendant Officers' conduct constitutes "willful

misconduct."  *See* 42 Pa. Cons. Stat. § 8550 (Exception to immunity applies when

"the act of the employee caused the injury, and such act constituted a crime, actual

fraud, actual malice, or willful misconduct.").

Willful misconduct means that "the actor desired to bring about the result

that followed or at least was aware that it was substantially certain to follow, so

that such desire can be implied. . . . [T]he term willful misconduct is synonymous

with the term intentional tort."  *Allen*, 644 F. Supp. 2d at 610–11 (internal citations

and quotation marks omitted).  Plaintiffs' claim of trespass against Defendant

Officers Schutte and Navedo is an intentional tort amounting to "willful

misconduct," and thus falls within the exception to immunity under the PSTCA.

42 Pa. Cons. Stat. § 8550; *see Win & Son, Inc. v. City of Phila.*, 162 F. Supp. 3d

449, 467 (E.D. Pa. 2016) (citing *Roehrig v. Twp. of Cass*, No. 1144 C.D. 2014,

2015 WL 5478354, at *4 (Pa. Commw. Ct. Aug. 18, 2015) (Under Pennsylvania law, "[t]respass is [an] intentional tort to the 'extent deliberate conduct is averred.'"); *Cooper v. City of Chester*, 810 F. Supp. 618, 626 (E.D. Pa. 1992) (holding that plaintiff's claims of "false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, and invasion of privacy are intentional torts amounting to 'actual malice' or 'willful misconduct,' and therefore fall within the ambit of § 8550." (internal citation omitted)).  Here, Defendant Officers trespassed on Plaintiffs' property when they deliberately entered Plaintiffs' home without consent, and later, when they deliberately returned to Plaintiffs' home and Defendant Officer Schutte forced the door open into Ms. Shujaa's abdomen.  Therefore, Defendant Officers are not immune from liability under the PSTCA and Plaintiffs' trespass claims may not be dismissed.

## IV.   GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT OFFICERS SCHUTTE AND NAVEDO INTENTIONALLY INFLICTED EMOTIONAL DISTRESS ON MS. SHUJAA

Defendant Officers Schutte and Navedo intentionally inflicted severe emotional distress upon Ms. Shujaa by returning to Plaintiffs' home at 1 AM and deliberately forcing the door open into Ms. Shujaa's abdomen, causing Ms. Shujaa to suffer a miscarriage.  *See* CSMF ¶¶ 17-24, 29-30, 45-46.  Under Pennsylvania law, a person may be liable for intentional infliction of emotional distress ("IIED")

24

if he or she, "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1183 (Pa. Super. Ct. 1989) (citing Restatement Torts 2d § 46 (1965)). This liability is premised on "conduct [that is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir. 2010) (citing *Field, 565* A.2d at 1184). Defendant Officers' conduct rose to this level by 1) returning to Plaintiffs' home at 1 AM in retaliation for Plaintiffs' complaints; 2) banging on the front door, waking up Plaintiffs' young family, and threatening to arrest Mr. Hunter without cause; and 3) pushing the front door into a pregnant woman's abdomen hard enough to cause a miscarriage. In isolation, each of these actions might exceed the "extreme and outrageous" threshold beyond which a court may not grant summary judgment—together, the Court must, at a minimum, permit the jury to decide.

In the employment context, courts have determined that excessive harassment by defendants in positions of power may be "sufficiently outrageous" to satisfy the "outrageous" requirement of IIED when the harassment is accompanied by "retaliatory behavior" by the defendant. *See e.g.*, *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988) (collecting cases involving harassment and accompanying retaliation). For example, in *Solomon v.*

25

*City of Philadelphia*, the court denied defendants motion for summary judgment where plaintiffs produced evidence "that they were harassed (including a physical assault on plaintiff Solomon) and -- because they complained about this behavior -- were retaliated against in the form of allegedly punitive transfers, having their belongings searched (and a desk overturned), and a variety of other unsavory actions." Nos. 94- 2427 to 94-2429, 1996 WL 20651, at *4 (E.D. Pa. Jan. 16, 1996). Here, as in *Solomon*, Plaintiffs were harassed, threatened, and intimidated and Ms. Shujaa was assaulted in retaliation for Plaintiffs' complaints about Defendant Officers' prior conduct. Thus, summary judgment is likewise inappropriate.

As a result of Defendant Officers Schutte and Navedo's extreme and outrageous conduct, Ms. Shujaa suffered and continues to suffer from anxiety and depression for which she has received and continues to receive therapy. CSMF ¶¶ 47-49. Despite Defendants' allusions to the contrary, Ms. Shujaa's emotional distress is "supported by competent medical evidence." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). Ms. Shujaa has produced records for over a dozen psychotherapy sessions. *See* CSMF ¶¶ 47-49. Additionally, the "History of Present Illness" section from Ms. Shujaa's Hall Mercer therapy records describe the multiple police visits after midnight and her being "physically pushed, which led to the miscarriage two days later" as adding to "increased distress and

also worsen[ing] her anxiety and depression." CSMF ¶ 48. Therefore, Ms. Shujaa has met her burden of adducing competent medical evidence and Ms. Shujaa's IIED claim against Officers Schutte and Navedo should not be dismissed. *See Corbett v. Morgenstern*, 934 F. Supp. 680, 684–85 (E.D. Pa. 1996) ("Pennsylvania courts have found that symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ... ongoing mental, physical, and emotional harm sufficiently state physical harm or injury to sustain causes of action for infliction of emotional distress." (internal marks and citations omitted)).

## V.   GENUINE ISSUES OF MATERIAL FACTS RELATING TO DEFENDANT CITY OF PHILADELPHIA'S FAILURE TO TRAIN ITS OFFICERS PRECLUDE SUMMARY JUDGMENT ON PLAINTIFFS' COUNT V

The constitutional violations committed by Defendants Schutte, Navedo, and Melvin described above in Section I were caused in part or in whole by the City of Philadelphia's failure to train its police officers on how to accept a citizen's complaint. To state a claim under *Monell*, a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his or her constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom. *Monell v. Dep't of Social Serv's*, 436 U.S. 658, 692-94 (1978); *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016). Where a plaintiff's claim involves a "failure to train or supervise municipal employees,

liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (vacating the district court's grant of summary judgment because there were genuine issues of material fact regarding whether the county exhibited deliberate indifference to the need for training) (internal quotation marks omitted).

Defendants assert that Plaintiffs have failed to put forth "evidence to show the City had a 'custom, policy or practice' of violating the constitutionally protected rights of citizens." Defs' MSJ 19. But, the evidence belies this assertion. The evidence shows that the City of Philadelphia's widespread custom and practice of failing to train its police officers on Executive Order 7-11 and Police Directive 12.18 caused the constitutional violations described herein. The City's repeated failures to handle citizens' complaints in accordance with its own written policies, coupled with the Philadelphia Police Department's admitted concerns about the adequacy of its training, support the reasonable inference of this widespread practice.

The City has formal policies in place for handling citizens' complaints, which require Police Department personnel to "inform any person who wishes to make a complaint against a police officer of the existence of the formal complaint procedure … and shall refer such persons to the various locations, including the

nearest location, where the [Citizen's Complaint Report] may be obtained and filed." CSMF ¶ 50.  Additionally, Police Department personnel are required to "maintain a professional demeanor and take no actions to intimidate, coerce or otherwise dissuade a complainant from submitting a [Citizen's Complaint Report]." *Id.* ¶ 50.

However, the City does not properly train its police officers on these policies, including the very police officers who violated Mr. Hunter's constitutional rights on September 14, 2015, and as such, the training program is inadequate to train police officers on accepting and processing citizens' complaints. *Id.* ¶¶ 50-52.  The City does not monitor when police officers actually receive a copy of these policies. *Id.* ¶ 53.  In fact, it is not clear if the updated Police Directive 12.18 was even distributed to Defendants Schutte, Navedo, and Melvin prior to September 14, 2015, when they interacted with Plaintiffs. *Id.* ¶¶ 55-56.  As a result of this failure to train, the Police Department's personnel engage in a policy or practice of ignoring Executive Order 7-11 and Police Directive 12-18, thereby preventing citizens from engaging in protected speech, preventing citizens from petitioning the Philadelphia Police Department for redress of their grievances, and deterring citizens of ordinary firmness from filing a complaint against police officers in violation of the First Amendment. *Id.* ¶ 62. Plaintiffs will show that Defendant Melvin repeatedly engaged in this policy or

practice on September 14, 2015, when he refused to provide Mr. Hunter the necessary information to allow him to file a complaint and instead purposefully misdirected him to call 911 to report a complaint in an effort to prevent and discourage Mr. Hunter from filing a complaint. *Id.* ¶¶ 13-16, 31.  And, Defendant Officers engaged in the policy or practice on September 14, 2015 when they returned to Plaintiffs' home not once, but twice. *Id.* ¶¶ 17, 34.  Additionally, a review of complaints against police, which have been made publicly available as a part of the Philadelphia Police Department's accountability processes, shows additional instances of Police Department personnel hindering citizens' ability to file reports against the police. *Id*. ¶¶ 57-62.

Plaintiffs will show that, through the conduct described above, Defendant City of Philadelphia violated Plaintiffs' First Amendment rights by engaging in a custom of ignoring and thereby preventing citizens from engaging in their First Amendment rights.  Defendant City of Philadelphia's failure to train Philadelphia Police Department personnel on how to accept complaints pursuant to Executive Order 7-11 and Police Directive 12.18 is deliberately indifferent toward the likelihood that Philadelphia Police Department personnel will violate the First Amendment by preventing citizens from engaging in protected speech, preventing citizens from petitioning the Philadelphia Police Department for redress of their grievances, and deterring citizens of ordinary firmness from filing a complaint

against police officers, as shown by the numerous instances of similar violations.

CSMF ¶¶ 57-61.  As a direct and proximate result of Defendant City of

Philadelphia's unlawful custom and/or its failure to train, Defendant City of

Philadelphia violated Plaintiffs' First Amendment rights.

## VI.   GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFFS' FOURTH AMENDMENT ILLEGAL SEARCH CLAIM

Defendant Officers violated Plaintiffs' Fourth Amendment right to be free

from illegal searches on two separate occasions.  First, Defendant Officers

unlawfully entered and searched Plaintiffs' residence without a warrant and

without obtaining lawful consent while investigating the original custody dispute.

CSMF ¶¶ 5-8.  Second, Defendant Officers unlawfully entered and searched

Plaintiffs' home when Defendant Officer Schutte pushed the front door into Ms.

Shujaa and placed his foot on the threshold while Defendant Officer Navedo

shined his flashlight into Plaintiffs' darkened living room where Mr. Hunter's

children were sleeping.  *Id.* ¶¶ 18, 29-30.  "It is a basic principle of Fourth

Amendment law that searches and seizures inside a home without a warrant are

presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586 (1980)

(internal quotations omitted).  "[T]he Fourth Amendment has drawn a firm line at

the entrance to the house.  Absent exigent circumstances, that ***threshold may not***

***be reasonably crossed without a warrant***."  *Id.* at 590 (emphasis added).  It is

undisputed that Defendant Officers did not have a warrant and there were no "exigent circumstances" justifying their entry.

Defendants argue that the officers never entered the home during any visit or that Darus Hunter Jr. consented to the entry on the first occasion. *See* Defs' MSJ at 15. However, Plaintiffs' sworn deposition testimony to the contrary regarding these genuine issues of material fact precludes the Court from granting summary judgment. *See Paladino*, 885 F.3d at 209.

### A.     Darus Hunter Jr. Could Not Provide Consent To A Search.

Plaintiffs testified that they first encountered Defendant Officers standing inside Plaintiffs' living room shining their flashlights on the children sleeping on their cots and that Darus Jr. was likely the one who let the officers in. CSMF ¶ 5; Ex. B, Shujaa Dep. 47:7-8 ("[Defendant Officers] were midway between the front door and the cots. . . . When I got to the door, [Darus Jr.] was standing with his hand near the door. . . . So he was the only one who could have let them in."). However, Darus Jr. was a minor at the time of the incident so he could not consent to Defendant Officers' entry. Additionally, Darus Jr. was mostly non-verbal due to his severe autism and would have been unable to comprehend the situation at hand. CSMF ¶ 6.[10] In Pennsylvania, consent is ineffective if it is given by a minor child

---

[10] Defendants assert that Plaintiffs have not produced evidence that Darus Hunter Jr. is severely autistic. Defs' MSJ at 16. However, both Mr. Hunter and Ms. Shujaa testified about Darus Jr.'s disability in their depositions. CSMF ¶¶ 6-7.

who does not have "dominion over the home equal to that of the [parent]…and the [parent] had the power to determine the extent of [the minor's] authority to admit people to the house." *Commonwealth v. Garcia*, 387 A.2d 46, 55 (Pa. 1978).  If police officers conduct a search under the mistaken belief that the person consenting had apparent authority, that belief must be a "reasonable mistake judged from an objective standard based on the totality of the circumstances." *Commonwealth v. Blair*, 575 A.2d 593, 597-98 (Pa. Super. Ct. 1990).

Darus Jr., as a minor, did not possess actual authority to consent to the search, and his disability prevented Defendant Officers from reasonably believing that he had the apparent authority to do so.  Mr. Hunter and Ms. Shujaa testified that Darus Jr. would have been unable to communicate with Defendant Officers and his disability would have been readily apparent to them.  CSMF ¶¶ 6-7; Ex. C, Hunter Dep. 106:9-14 ("Q: Would [Darus Jr.] be able to speak with the police officers?  A: No.  No.  As I said, even at present he's not able to engage in articulate speech with someone, but at that time there was virtually no verbal communications"); Ex. B, Shujaa Dep. 60:11-13 ("anyone can tell that [Darus Jr.] is severe [sic] autistic especially at the time.  He was barely verbal at all").  Therefore, Plaintiffs have established that there is a genuine dispute as to whether Defendant Officers violated Plaintiffs' rights by conducting a warrantless entry and

search without first obtaining consent from Mr. Hunter or Ms. Shujaa, the only adults in the residence who could lawfully give such consent.

### B. Defendants Unlawfully Entered And Searched Plaintiffs' Home When They Returned To Retaliate For Plaintiffs' Complaints

Defendant Officers unlawfully entered and searched Plaintiffs' home when they returned to Plaintiffs' home in retaliation for Plaintiffs' complaints about their conduct.  Ms. Shujaa testified that Officer Schutte placed his foot across the threshold of the door as he pushed the door into her abdomen.  CSMF ¶ 29; Ex. B, Shujaa Dep. 75:61-9 ("he was leaning forward and his foot was on the threshold and his hand was actually on the door.").  The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton, supra*, 445 U.S. at 585; s*ee also, Commonwealth v. Berkheimer*, 57 A.3d 171, 178 (Pa. Super. Ct. 2012).  By placing his foot on the door and forcibly pushing it open, Defendant Officer Schutte, for a second time, gained unlawful physical entry into Plaintiffs' home.  Thus, Plaintiffs have presented a genuine dispute of material fact as to Plaintiffs unlawful search claim and summary judgment may not be granted.

## VII.   CONCLUSION

In response to a simple custody dispute, Defendant Officers Schutte and Navedo illegally entered and searched Plaintiffs' residence without a warrant. Further, they knew Plaintiffs had complained about the officers' prior conduct

when they returned to Plaintiffs' home at 1 AM in response to a "supervisor only" call over the radio.  Defendant Officers Schutte and Navedo pounded on Plaintiffs' door, threatened Mr. Hunter, woke Mr. Hunter's children, and pushed the front door into Ms. Shujaa's abdomen hard enough to cause her to suffer a miscarriage in retaliation for Plaintiffs' protected speech.  Despite having policies and procedures mandating that police officers facilitate the processing and filing of citizens' complaints and refrain from intimidating complainants, the City of Philadelphia failed to train its officers, including Defendants Schutte, Navedo, and Melvin, on these policies.  Moreover, the record is replete with material factual disputes, which must be resolved by a jury.  Accordingly, Defendants' Motion for Summary Judgment should be denied.

Dated: January 22, 2019                  Respectfully submitted,

*/s/ Michaela D. Young*                   */s/ John P. McClam*
John C. Dodds (Pa. No. 44423)            Stephen D. Brown (PA Bar No. 27829)
Michaela D. Young (Pa. No. 320928)       John P. McClam (PA Bar No. 321252)
**Morgan, Lewis & Bockius LLP**          Monica I. Gorny (PA Bar No. 324535)
1701 Market Street                       **Dechert LLP**
Philadelphia, PA  19103                  Cira Centre
(215) 963-5000                           2929 Arch Street
michaela.young@morganlewis.com           Philadelphia, PA 19104
                                         (215) 994-2046
*Attorneys for Plaintiff Darus Hunter*   john.mcclam@dechert.com

                                         *Attorneys for Plaintiff Kenya Shujaa*

## <u>CERTIFICATE OF SERVICE</u>

I, John P. McClam, do hereby certify that on January 22, 2019, I caused a true and correct copy of the foregoing to be served via email and the Court's ECF filing system.

> */s/ John P. McClam*
> John P. McClam (Pa. No. 321252)
> Dechert LLP
> Cira Centre
> 2929 Arch Street
> Philadelphia, PA 19104
> (215) 994-4000 (telephone)
> (215) 994-2222 (fax)
>
> *Attorney for Plaintiff Kenya Shujaa*