# EXHIBIT H

| | |
|---|---|
| STATEMENT OF: | Police Officer Michael Navedo<br>Badge #6210<br><br>12th District 3A Platoon |
| APPOINTMENT DATE:<br>ASSIGNMENT DATE: | 2/22/10<br>10/31/11 |
| DATE AND TIME: | 11/05/15 @ 11:45 PM |
| PLACE: | Internal Affairs Division<br>7790 Dungan Road Phila. Pa. 19111 |
| CONCERNING: | PAC # 15-025 IAD # 15-0568 |
| INTERVIEWED BY: | Lieutenant Joseph McGarrey #451, IAD |
| RECORDED BY: | Same |
| IN PRESENCE OF: | Danielle Nitti |
| IN PRESENCE OF: | |

I am Lt. Joseph McGarrey #451, Internal Affairs Division. I will be asking you questions in reference to a Complaint Against Police and I will be taking your statement directly onto the computer.

Q. Are you represented by counsel?
A. Yes.

Q. Have you had the opportunity to consult with your attorney?
A. Yes

Q. Do you need to consult with your attorney before we continue?
A. No.

You are reminded that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Article 1-§ 008-10 of the Disciplinary Code.

You are also reminded that lying or attempting to deceive regarding a material fact during the course of any Departmental investigation is punishable 10 days suspension to dismissal under Article 1-§ 009-10 of the Disciplinary Code.

Q. Do you understand this?
A. Yes.

P/O Navedo _____

1

Q. Are you willing to cooperate?
A. Yes.

Q. P/O Navedo, I am showing a copy of Patrol Activity Log for the date of 9/14/15. After reviewing that document can you tell me if you were working on that date and if so, what was your assignment?
A. Yes, I was working the 12am to 8:15 am tour of duty in the 12th District and I was the EPW 1201 and I was working with my partner, P/O Robert Schutte.

Q. P/O Navedo, during your tour of duty, do you recall handling an assignment at the location of 1242 S 51st Street.
A. Yes.

Q. P/O Navedo, in your own words can you tell me what you recall about that assignment?
A. We were met by a female at the district who stated that her daughter had not been brought home and the father of her daughter lived at that location. Basically she was stating that the father was violating the custody agreement. We went to the location to speak with the father. We knocked at the door and a female answered the door and then a male came to the door. I asked the male if his daughter was home. He said yes and he asked why were there. I explained to him that the mother came to the district complaining that the daughter was not brought home. She told us there was a custody agreement stating that the daughter should have been brought home. He told me that he had documentation stating that if the daughter was with him on a weekend when Monday was a holiday, the daughter could stay with him. He showed me documents to that effect. I looked at the paperwork, it looked legitimate, and I called the mother and explained to her what was stated by the male, and what the paperwork stated. She said that it was Ok as long as the daughter came home the next day. After that we left. We were gone from the location for only about 3 minutes when we heard another call come out for a supervisor to take the same location. When we heard the call we went back to back up the supervisor and tell him what the original assignment was. When we got there, we knocked on the door and the male came to the door. This time, the male was very hostile towards us and told us to get the fuck off the porch and then he slammed the door. We waited for the lieutenant to arrive, we told him what had occurred, and went up and knocked on the door. There was no answer so the lieutenant told us to write a 75-48 and put on it that he responded top the location but no one answered. I wrote the 75-48 and we resumed.

Q. P/O Navedo, do you recall the name of the mother of the child who was concerned that the child had not been returned home?
A. No, I do not.

Q. P/O Navedo, where did you first meet the mother of the child?
A. At the district.

Q. P/O Navedo, did the mother of the child accompany you to the residence where the child was staying with the father?
A. No, I told her to stay at the district.

P/O Navedo _____

2

Q. P/O Navedo, what was the demeanor of the individuals you met at the residence on 51st Street when arrived the first time?
A. The first time he was upset that we were there but them when we explained everything and he show us the documentation, he was fine. That is why we went back, we didn't really know what was going on, we thought we resolved the situation, and we went back and knocked to see if there was something we could handle without the complainant having to wait for the lieutenant. When we knocked the second time it was like a 180, he was totally hostile towards us, yelling at us, cursing at us.

Q. P/O Navedo, did you enter the residence during any time you responded?
A. No.

Q. P/O Navedo, did you or your partner ever enter the residence?
A. No.

Q. P/O Navedo, did you forcibly push open the door the second time you arrived at the residence in order to gain entry, knocking the female back with the door?
A. No.

Q. P/O Navedo, did P/O Schutte forcibly push open the door the second time you arrived at the residence in order to gain entry, knocking the female back with the door?
A. No.

Q. What was the Lieutenants name who was working that evening?
A. Lt. Disanto.

Q. P/O Navedo, if the second call was for a supervisor only, why did you respond and go back to the location?
A. We were going to back up the lieutenant but also the first time we were there, everything was fine, and we attempted to see if there something that we could resolved to assist the complainant. The lieutenant was coming a distance and we didn't want the complainant to have to wait if it was something we could handle.

Q. Is there anything else you want to add to this investigation?
A. No.

This is an on-going investigation being conducted by Internal Affairs. By orders of the Commanding Officer of Internal Affairs you are instructed not to disclose any information discussed here to anyone other than your attorney and FOP representative.

P/O Navedo _____

STATEMENT CONCLUDED:          11:05 p.m.

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

I MUST REMIND YOU THAT THIS INVESTIGATION IS STILL IN PROGRESS AND THAT THE INFORMATION IN THIS STATEMENT IS CONFIDENTIAL AND THAT YOU ARE NOT TO REVEAL ANY OF THIS INFORMATION TO ANYONE EXCEPT MYSELF OR YOUR ATTORNEY UNTIL THE INVESTIGATION IS CONCLUDED. A FAILURE TO COMPLY WITH THIS REQUEST WILL BE CONSIDERED A LACK OF COOPERATION IN THIS INVESTIGATION.

NAME: _____ [signature] / 6210 _____

DISTRICT /UNIT: _____ 12th Dist _____

DATE AND TIME: _____ 11·5·15   11:10 pm _____

WITNESSES: _____

P/O Navedo [signature]

4