IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARUS LEON HUNTER, et al.,** | : |
| Plaintiffs, | : |
| | : Civil Action |
| v. | : No. 17-889 |
| | : |
| **OFFICER SCHUTTE, et al.,** | : |
| Defendants. | : |

**DEFENDANTS' PRETRIAL MEMO**

Defendants, Philadelphia Police Officers Robert Schutte and Michael Navedo, by and through undersigned counsel, hereby submit the following pretrial memorandum in accordance with Local Rule 16(c) and this Court's policies and procedures:

1. **Jurisdiction**

Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343 and 1367. Plaintiff's claims arise under federal law, and the Court has supplemental jurisdiction over Plaintiffs' state law claims.

2. **Brief Statement of Counter-Facts**

This lawsuit arises out of an incident where Plaintiffs, Darus Hunter and Kenya Shujaa, allege that Officers Schutte and Navedo violated their 4th Amendment rights by illegally searching their home on September 13-14, 2015. Plaintiffs also bring a claim of trespass against both officers and Mr. Hunter alleges that the officers engaged in First Amendment retaliation.

On September 14, 2015, Defendants, Officers Schutte and Navedo were on duty in the 12th District, working a shift from 12 AM to 8:15 AM. Before they left the 12th District at the start of their shift, they were given a job. A woman, Cinquetta Mohammed, had come to the district and reported that she had a child custody dispute. Ms. Mohammed explained that her daughter was with her father for the weekend and should have been returned to Ms. Mohammed that day,

1

Sunday, but was not. The officers listened to Ms. Mohammed and reviewed a custody order she brought. Officers Schutte and Navedo then drove to the father's residence, to investigate the custody dispute.

Shortly after midnight on September 14, 2015, Officers Schutte and Navedo knocked on Darus Hunter and Kenya Shujaa's front door, announcing themselves as police. The officers shone their flashlights into the house so they could see who they were encountering at the house for safety reasons. The observed two children asleep on beds in the front room. The officers spoke with Mr. Hunter and explained why they were there. During the entirety of their conversation with Mr. Hunter, Officers Schutte and Navedo remained on the front porch of the house. At no point did the officers enter the residence.

Officers Navedo and Schutte told Mr. Hunter that Ms. Mohammed had made a complaint with police about their child not being returned to her pursuant to the custody order. Mr. Hunter and Ms. Shujaa showed the officers the custody agreement and explained that the following day was a school holiday, so Mr. Hunter was allowed to return his daughter on Monday, as opposed to Sunday. The officers agreed and left the residence. Mr. Hunter and Ms. Shujaa were calm and cooperative during this first visit. Based on this interaction, the officers believed the matter was resolved.

Thereafter, Mr. Hunter called 911 to ask how to file a complaint against two officers who knocked on his door. Mr. Hunter concluded the call by telling the operator that he would "come into the station and file a complaint." Mr. Hunter also called the 12th District and spoke with the Operations Room supervisor, Sergeant Michael Melvin. Mr. Hunter wanted to know why the officers were allowed to come to his residence to investigate a civil custody dispute. Sgt. Melvin explained that he did not know why they were there, as he was the Operations Room supervisor

and not monitoring the radio. Mr. Hunter was belligerent and cursed at Sgt. Melvin several times. Sgt. Melvin told Mr. Hunter he could called 911 and police would respond to the call. Mr. Hunter hung up. He called back a second time to complain and Sgt. Melvin went into the computer and found out the names of the officers on location. Mr. Hunter also requested a supervisor and Sgt. Melvin said he would call the lieutenant on duty and have him respond to Mr. Hunter's residence.

A radio call was then made requesting a supervisor at Plaintiffs' residence. Officers Schutte and Navedo heard the request for a supervisor over radio and returned to the scene. They were perplexed as to why a supervisor was needed, as they had resolved the issues and all parties seemed satisfied. The officers knocked on Plaintiffs' door a second time to see if there were any issues that they could resolve. Mr. Hunter responded through a window with hostility and anger, while Ms. Shujaa called 911. She spoke with Sergeant Bashawn Hameen, who explained that there was a supervisor en route to the location. The officers realized that the Plaintiffs were very upset and deemed it best to leave the porch and wait for their supervisor to arrive. When Ms. Shujaa realized the reason for her return, she told Sgt. Hameen the issue was resolved.

Lieutenant DiSanto arrived on the scene and spoke with the officers. He then knocked on Plaintiffs' door several times, loudly, and did not receive any response. He left the premise and closed the job over radio. After Mr. Hunter filed a complaint, Internal Affairs conducted an investigation and concluded the allegations were unfounded.

3. **Damages**

Defendants deny that they are liable for Plaintiffs' damages, particularly Ms. Shujaa's miscarriage.

4. **Witness List**

   1. Plaintiff Darus Hunter – Plaintiff will testify as to the events of September 13-14, 2015 and his interactions with the officers.

   2. Plaintiff Kenya Shujaa - Plaintiff will testify as to the events of September 13-14, 2015 and her interactions with the officers.

   3. Defendant Officer Robert Schutte – Defendant will testify as to the events of September 13-14, 2015 and his interactions with Plaintiffs.

   4. Defendant Officer Michael Navedo - Defendant will testify as to the events of September 13-14, 2015 and his interactions with Plaintiffs.

   5. Lieutenant Andrew DiSanto – Lt. DiSanto will testify about being called to the scene over radio, as the supervisor on duty. He will testify about his interactions with the officers, as well as his attempts to communicate with Plaintiffs.

   6. Sergeant Michael Melvin – Sgt. Melvin will testify about the phone calls he received from Mr. Hunter after the officers visited the residence the first time.

   7. Sergeant Bashawn Hameen – Sgt. Hameen will testify about the conversation he had with Ms. Shujaa when she called 911.

   8. Dr. Joshua Holden – Dr. Holden will testify as a defense expert with respect to Ms. Shujaa's miscarriage and whether the officers' alleged actions caused the miscarriage.

5. **Exhibit List**

1. Official Police Misconduct Report by Darus Hunter
2. Darus Hunter Internal Affairs Statements
3. Kenya Shujaa Internal Affairs Statement
4. Lt. Andrew DiSanto Internal Affairs Statement

5. Sgt. Michael Melvin Internal Affairs Statement

6. Officer Robert Schutte Internal Affairs Statements

7. Officer Michael Navedo Internal Affairs Statement

8. Lt. McGarrey Note

9. 75-48 Investigate Premise

10. MDT log

11. Dispatcher and Radio Transmission

12. Patrol Log by Officers Schutte and Navedo, dated 9/14/15

13. Kenya Shujaa's Medical Records

14. Citizen's Complaint by Darus Hunter

15. Internal Affairs Letter to Kenya Shujaa, re: investigation – unfounded

16. 911 Phone Calls – tracks 1 through 9

17. Expert Report by Dr. Joshua Holden

18. Email from Darus Hunter to Lt. Joseph McGarrey, dated 10/21/15

19. Custody Order between Cinquetta Muhammad and Darus Hunter, dated 8/13/15

20. Photograph of outside of 1242 S. 51st Street, Philadelphia, PA

Defendants reserve the right to use any and all previously recorded testimony from any witnesses presented by parties. Further, Defendants reserve the right to use exhibits identified by Plaintiffs in their pretrial memorandum.

**6. Estimated Days for Trial**

Defendants estimate three to four days for trial, in addition to jury selection.

**7. Other Issues**

Defendants note that Plaintiffs intend to introduce several documents that were the subject of Defendants' Motion in Limine to exclude evidence of Ms. Shujaa's miscarriage and work-related documents. ECF Doc. 111. The Court granted in part and denied in part the Motion. ECF

5

Doc. 115.  At the pretrial conference, Defendants seek clarification from the Court and Plaintiffs' counsel as to the admissibility of these documents.  *See* ECF Doc. 120 at p. 12-13 (PTX-23 through 39).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Shannon Zabel* |
|  | Shannon Zabel |
|  | Assistant City Solicitor |
|  | Attorney Identification No. 321222 |
|  | City of Philadelphia Law Department |
|  | 1515 Arch Street, 14th Floor |
|  | Philadelphia, PA 19102 |
|  | (215) 683-5114 |
| Dated:  February 10, 2020 | shannon.zabel@phila.gov |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARUS LEON HUNTER, et al.,** : | |
| Plaintiffs, : | |
| : | Civil Action |
| v. : | No. 17-889 |
| : | |
| **OFFICER SCHUTTE, et al.,** : | |
| Defendants. : | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date below, Defendants' Pretrial Memorandum was filed via the Court's electronic filing system and is available for downloading by all parties of record.

 

                                                */s/ Shannon Zabel*
                                                Shannon Zabel
                                                Assistant City Solicitor
                                                Attorney Identification No. 321222
                                                City of Philadelphia Law Department
                                                1515 Arch Street, 14th Floor
                                                Philadelphia, PA 19102
                                                (215) 683-5114
Dated:  February 10, 2020                shannon.zabel@phila.gov